IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LAURIE DEAN ZENA                                                                PLAINTIFF

v.                             Civil No. 12-2120

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                  DEFENDANT

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Laurie Zena, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.   **Procedural Background:**

Plaintiff filed her application for DIB on June 8, 2009, alleging an onset date of November 1, 2004, due to headaches; blood clots in the arms; pain, swelling, and numbness in the neck, back, and arms; depression; gastritis; and, shingles. Tr. 11, 108-111, 144, 169-170, 189-190, 203, 206. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 60-61. An administrative hearing was held on July 22, 2010. Tr. 27-59. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 50 years old and possessed an eighth grade education. Tr. 19, 32, 60, 149. She had past relevant work "(PRW")" experience as a hand packager for a printing company. Tr. 145, 151-160, 161-168, 211, 214.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

The ALJ concluded that Plaintiff's date last insured was September 30, 2009.[2] In a written opinion dated October 20, 2010, he found Plaintiff's migraine headaches, obesity, pain disorder, and mood disorder to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 13-15. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that he retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) in that the claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit for about six hours during an eight-hour workday and stand and walk for about six hours during an eight-hour workday. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She cannot climb ladders, ropes or scaffolds. She must avoid concentrated exposure to hazards such as unprotected heights and heavy machinery. She is able to understand, remember and carry out simple, routine and repetitive tasks. She can respond appropriately to supervisors, co-workers, and usual work situations but can have only occasional contact with the general public.

Tr. 15. The ALJ then concluded that Plaintiff could perform work as a housekeeper, mail clerk, and hand packager. Tr. 20.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on April 11, 2012. Tr. 1-6. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 7, 8.

**II. Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it

---

[2] In order to qualify for DIB, a claimant must show that he or she became disabled during the period in which he or she met the DIB requirements. *Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001). A claimant who becomes disabled after the expiration of her insured status is not entitled to DIB. *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998). Thus, the period of review is from November 1, 2004, the alleged onset date, through September 30, 2009, Plaintiff's last insured date.

adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached

3

does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Plaintiff contends that the ALJ erred by 1) failing to conclude that her personality disorder and deep vein thrombosis in her left arm with associated tenderness and weakness were severe impairments; 2) failing to fully and fairly develop the record by obtaining a medical source statement from Dr. Kralik and requesting more information from Dr. Elangwe regarding the current state of Plaintiff's blood clots and arm pain; 3) improperly and inappropriately discrediting Plaintiff's subjective complaints; 4) concluding that Plaintiff could perform a range of light work without regard to the limitations associated with the blood clot in her left arm, the combining affects of her obesity and migraine headaches, or the toxic nature of her mental health problems; and, 5) failing to include all of Plaintiff's limitations in the hypothetical question he posed to the vocational expert.

#### A. Non-severe Impairments:

In her first point of error, Plaintiff posits that the ALJ improperly concluded that her personality disorder and deep vein thrombosis in her left arm were non-severe impairments. A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20 C.F.R. § 404.1508.

In reviewing the medical evidence of record, we note that Plaintiff was first diagnosed with deep vein thrombosis in the brachial and cephalic veins in November 12, 2008, after undergoing an MRI with

4

contrast. Tr. 258. She developed swelling and sore knots in her arm, immediately following the MRI on October 27. The pain and swelling worsened, resulting in Coumadin treatment on November 17. Tr. 271. However, this did not resolve her pain. A second doppler study was ordered by Dr. Elangwe in January 2009, showing a partially clotted area near her left elbow in the brachiocephalic vein. Tr. 270, 277, 292. Records indicate that Plaintiff's anticoagulation values were then monitored for a time. Tr. 278-279.

In June 2009, Plaintiff again reported severe pain and swelling in her left arm. Tr. 269. At this time, Dr. Kareus indicated that Plaintiff had been non-complaint with Coumadin treatment. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility). And, noted that she became angry when he refused to prescribe Percocet. *See Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995) (drug-seeking behavior further discredits her allegations of disabling pain). A doppler study revealed total occlusion of the left brachial vein with collaterals, which suggested a chronic process. Tr. 272. As a result, her dosage of Coumadin was increased. Tr. 276. However, although Plaintiff did seek out treatment in 2010, she made no further mention of her arm pain. *See Moad v. Massanari*, 260 F.3d 887, 892 (8th Cir. 2001) (in assessing credibility, the court noted that plaintiff had not sought treatment from any physician in the seven months prior to administrative hearing).

We note that a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *See Trenary v. Bowen*, 898F.2d 1361, 1364 (8th Cir. 1990). And, we note that Plaintiff was only treated for symptoms associated with her deep vein thrombosis from November 2008, until June 2009, on four occasions spanning less than 12 months. *See Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997) (to be entitled to disability benefits, Plaintiff must establish a physical impairment lasting at least one year that prevents her from engaging in any gainful activity).

5

While we are cognizant of Dr. Hoyt's examination and assessment dated March 30, 2011, indicating that Plaintiff was extremely limited with regard to the use of her left arm, this assessment was conducted 18 months after the expiration of Plaintiff's date last insured. Given that Plaintiff had not sought out treatment for her thrombosis since June 2009 and that all of her treatment had been conservative in nature, it is difficult for the undersigned to say that Dr. Hoyt's assessment related to her condition on or before her date last insured. *See Gowell v. Apfel*, 242 F. 3d 793, 796 (8th Cir. 2001). Clearly, had Plaintiff's condition been as severe as alleged, we believe Plaintiff would have sought out more medical treatment. And, although Plaintiff might argue that her failure to obtain more treatment was due to her financial situation, we can find no evidence to indicate that she was ever denied treatment due to a lack of funds, or that she ever availed herself of the treatment options available to indigent and/or low income individuals. *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992). Further, Dr. Kralik noted that Plaintiff was eligible to receive Indian Medical Services, but had failed to avail herself of this option as well.

Similarly, Plaintiff contends that the ALJ improperly concluded that her personality disorder was non-severe. However, the evidence indicates that Plaintiff never sought out formal mental health treatment. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability. Aside from the consultative examination conducted by Dr. Kralik specifically for Plaintiff's disability case, Plaintiff was treated for depression by her general practitioner on few occasions. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments). Dr. Kralik did diagnose Plaintiff with personality disorder, not otherwise specified, with histrionic, borderline, narcissistic, passive-aggressive, and parasitic-dependent personality features, but she also noted that Plaintiff seemed disingenuous; had an exaggerated and odd

6

presentation with a very blunted, apathetic affect; and, appeared to feign her schizoid-like demeanor to a certain extent. Tr. 335. *See Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (ALJ may discount a claimant's allegations if there is evidence that the claimant is a malinger or was exaggerating symptoms for financial gain). She suspected malingering and/or exaggeration and assessed Plaintiff with a global assessment of functioning score between 51 and 60, indicative of only moderate symptoms. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 32 (4th ed. 2000). Dr. Kralik indicated that Plaintiff's ability to perform activities of daily living was moderately to significantly impaired, her capacity to communicate and interact in a socially adequate manner was adequate, her capacity to communicate in an intelligible and effective manner was generally adequate, her capacity to cope with the typical mental/cognitive demands of basic work-like tasks was mildly to moderately impaired, her ability to attend and sustain concentration on basic tasks was adequate, her capacity to sustain persistence in completing tasks seemed likely better that historically manifested, and her capacity to complete work-like tasks within an acceptable time frame seemed likely better than she manifested. However, she also noted that Plaintiff had worked in jobs that required interpersonal contact in the past, stating that Plaintiff appeared able to consciously manipulate her presentation style to suit her purposes. Dr. Kralik opined that Plaintiff might act as though she did not understand instructions for secondary gain, such as getting someone to do the work for her.

The mere existence of a mental disturbance is not per se a disability within the meaning of the Act. *See Dunlap v. Harris*, 649 F. 2d 637, 638 (8th Cir. 1981). And, here, it does not appear that Plaintiff's personality disorder was severe enough to even warrant formal mental health treatment, as she did not seek out any. Therefore, we find substantial evidence to support the ALJ's conclusion that Plaintiff's personality disorder was non-severe.

However, we note that the ALJ's RFC assessment reads as follows: "She is able to understand, remember and carry out simple, routine and repetitive tasks. She can respond appropriately to

supervisors, co-workers, and usual work situations but can have only occasional contact with the general public."[3] Clearly, this adequately accounts for all of Plaintiff's mental impairments, whether found to be severe or not. And, remand merely for the purpose of concluding that Plaintiff's personality disorder was severe would not change the outcome of this case.

### B. Duty to Fully and Fairly Develop the Record:

Plaintiff next asserts that the ALJ failed to fully and fairly develop the record by obtaining a medical source statement from Dr. Kralik and requesting more information from Dr. Elangwe regarding the current state of Plaintiff's blood clots and arm pain. The ALJ owes a duty to the claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994). The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010).

Contrary to Plaintiff's allegation, the ALJ had ample evidence upon which to base his decision. Dr. Kralik examined Plaintiff on only one occasion, and concluded that Plaintiff was likely malingering. The record also reveals that Plaintiff failed to seek out formal mental health treatment. Had Plaintiff's alleged personality disorder been as limiting as alleged, we believe Plaintiff would have sought out

---

[3] The ALJ is required to determine a Plaintiff's residual functional capacity (RFC), *i.e.*, the most that she was capable of doing despite the combined effects of both her severe and non-severe medically determinable impairments. 20 C.F.R. § 404.1545(a); *see Casey v. Astrue*, 503 F.3d 687, 691 n. 3 (8th Cir.2007). In making this determination, the ALJ had to consider "all of the relevant medical and other evidence." *See* 20 C.F.R. § 404.1545(a)(3).

treatment. Therefore, her failure to do so suggests that her symptoms were not as limiting as alleged, and fails to provide a basis for a remand for further development of the record.

For the reasons outlined in the previous section, we also find no basis for a remand for further development of the record with regard to Plaintiff's deep vein thrombosis. Again, had her alleged pain and limitation been disabling, we believe she would have sought out more treatment. And, her failure to do so weighs against her claims.

We do note Dr. Hoyt's 2011 assessment noting extreme limitations with regard to Plaintiff's left arm, but for the reasons numerated above, we can find nothing in the record to document ongoing arm pain between her date last insured, September 30, 2009, and Dr. Hoyt's assessment. In fact, during the relevant time period, Plaintiff's treating doctors did not document any limitations with regard to her left arm. *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was so impaired or disabled that the claimant could not work at any job). As such, Dr. Hoyt's assessment does not mandate that the case be remanded for further development of the record.

### C.    Subjective Complaints:

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.429.  *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). These factors, which provide as follows, must be analyzed and considered in light of the claimant's subjective complaints of pain:  (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *See Polaski,* 739 at 1322. The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints.  *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000).

9

As long as the ALJ properly applies these five factors and gives several valid reasons for his or her finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

The ALJ noted that, although Plaintiff complained of daily severe, debilitating pain, she sought out only sporadic medical treatment. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). She was treated twice during the fall of 2007 for shingles and upper back pain, but received no further treatment until September 2008, when she complained of stomach pain, diarrhea, and left-sided headache pain. An EGD revealed a hiatal hernia and mild gastric changes, and a biopsy was negative resulting in prescriptions for Nexium and Reglan. In October, she returned with complaints of left-sided headache pain, severe enough that she had taken off work. An examination was normal, and Plaintiff was diagnosed with chronic daily headaches and her medication changed to Zonegran. *See Forte*, 377 F.3d at 895 (holding that lack of objective medical evidence is a factor an ALJ may consider). An MRI with contrast in October 2008 showed patchy ethmoid sinus disease, but no intracranial abnormalities. *Id*. However, the dye injected for the MRI caused a deep vein thrombosis in her left arm[4], for which she was treated in November 2008, January 2009, and June 2009. In June 2009, Plaintiff also reported worsening lower back pain, but the doctor noted no clinical findings. And, as previously mentioned, Coumadin non-compliance and drug seeking behavior were noted during this visit. *See Guilliams*, 393 F.3d at 802 (failure to follow a recommended course of treatment weighs against credibility). Plaintiff did not seek further treatment until April 2010, when she was diagnosed with depression, insomnia, and stable reflux. Tr. 373. Her Celexa dosage was increased and she was

---

[4]Her symptoms included knots, swelling, redness, and pain.

10

prescribed Trazodone. A few days later, she was treated for continued daily headaches and lightheadedness resulting in occasional falls.[5] Tr. 371. The doctor noted problems with overuse of medication, as Plaintiff had reported taking Oxycodone, for which she had no prescription, and "someone else's" Amitriptyline. She was prescribed Topamax and Amitriptyline. In June 2010, Plaintiff reported continued problems with sleeplessness and headaches. Physical and neurological exams were within normal limits, and her mental status was noted to be "good." Tr. 374. This was the last treatment note in the record.

In March 2011, approximately 18 months after the expiration of Plaintiff's date last insured, Dr. Hoyt performed a physical exam. Tr. 376. However, as previously noted, we can find nothing to indicate that Plaintiff's limitations on this date relate back to her condition on or before her date last insured, September 30, 2009. *Martonik v. Heckler*, 773 F.2d 236, 240 (8th Cir. 1985) (holding that both objective and subjective evidence must be considered, including "medical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status because it may bear upon the severity of the claimant's conditions before the expiration of his or her insured status"). Accordingly, Dr. Hoyt's assessment is of little value to the undersigned.

The ALJ also noted Plaintiff's own description of her activities of daily living. On July 6, 2009, Plaintiff completed an adult function report. Tr. 171-178. She indicated that she could care for her dog, prepare simple meals, wash small loads of laundry and dishes, go outside once per day for approximately 10-15 minutes, walk, ride in a car, shop for groceries and household items in stores once per week for 20-30 minutes, pay bills, count change, handle a savings account, use a checkbook/money orders, talk to family on phone 6-8 times per month, watch television, and attend medical appointments. On October 20, 2009, Plaintiff completed a second adult function report, indicating the same basic abilities. Tr. 191-

---

[5]There were, however, no treatment notes or emergency room visits documenting her falls or any injuries sustained is said falls.

11

198. While these activities do not necessarily rule out the possibility of disabling pain, we do believe they indicate that Plaintiff's mental abilities were not as limited as reported. Clearly, she was able to interact with family, handle financial matters, and watch television. And, Plaintiff admitted that she was able to get along with authority figures. Accordingly, for the aforementioned reasons, we concluded that substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints were not entirely credible.

### D. RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

In the present case, the ALJ concluded that Plaintiff could perform a range of light work. We note that the record contains only one RFC assessment. On July 22, 2009, Dr. David Hicks, a non-examining consultative physician conducted an RFC. Tr. 325-332. After reviewing her medical records,

he concluded that Plaintiff could perform light work. And, we note that the ALJ agreed with Dr. Hick's conclusion that Plaintiff could perform light work, but due to her reports of pain, limited her to occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no climbing ladders, ropes or scaffolds; and, no concentrated exposure to hazards such as unprotected heights and heavy machinery.

Likewise, the record contains only one mental RFC assessment. On September 15, 2009, Dr. Jerry Henderson, another non-examining consultant, reviewing Plaintiff's medical records. Tr. 346-363. He concluded that she would have moderate limitations with regard to activities of daily living, maintaining social function, carrying out detailed instructions, maintaining attention and concentration for extended periods, sustaining an ordinary routine without special supervision or being distracted, completing a normal workday and work week without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in work setting, and setting realistic goals or making plans independently of others. However, he indicated that she was able to perform work where the interpersonal contact was incidental to the work performed, the complexity of the tasks is learned and performed by rote, the tasks involve little judgment and few variables, and the supervision required is simple, direct, and concrete. From this, the ALJ determined Plaintiff was able to understand, remember and carry out simple, routine and repetitive tasks, respond appropriately to supervisors, co-workers, and usual work situations, and could have only occasional contact with the general public. After reviewing the evidence, and for the reasons previously enumerated in this opinion, we find the ALJ's RFC assessment to be supported by substantial evidence in the record.

### E. Vocational Expert:

Lastly, Plaintiff attacks the vocational expert's testimony. She contends that the hypothetical question upon which the expert based his testimony did not contain all of Plaintiff's limitations, thereby rendering the expert's testimony unreliable. However, the ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (quotation and citation omitted). Here, the ALJ's hypothetical question included all of Plaintiff's limitations found to exist by the ALJ, and set forth in the ALJ's description of Plaintiff's RFC. *Id*. Based on our previous conclusion that the ALJ's RFC findings are supported by substantial evidence, we hold that the hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits." *Id*.

### IV. Conclusion:

Based on the foregoing, the undersigned recommends that the ALJ's decision be affirmed, and Plaintiff's Complaint be dismissed with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of April 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)